NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COMPANY, PLAINTIFF-APPELLANT, v. THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON, DEFENDANTS-RESPONDENTS.

Argued November 9, 1908—Decided June 15, 1911.

Where a contract purporting to be made by a city in respect of a matter concerning which the city has the power to contract, is signed by the mayor and sealed with the municipal seal, the contract will be *prima facie* presumed to be within the municipal authority. This presumption will be rebutted only when it appears that no authority was given to the mayor to sign and affix the seal to such contract by any department of the city government upon which rested the authority to authorize the contract.

On appeal from the Paterson District Court.

Before Justices REED, BERGEN and MINTURN.

For the plaintiff-appellant, *Collins & Corbin.*

For the defendant-respondent, *Edward F. Merrey.*

The opinion of the court was delivered by

REED, J. The action was upon two contracts in the name of the city of Paterson of the one part and the New York. Susquehanna and Western Railroad Company of the other part.

In each of these contracts the railroad company gave a license to the city of Paterson to build a sewer under the route of the railroad company.

The contracts provided that the railroad company should have the option to do all the work necessary to support its tracks during the construction of the sewer by the city, and contracted that the cost of the work so done by the railroad company should be paid to it by the city.

The railroad company did such work, the amount and valuation of which work was proven at the trial, and found by the court to be reasonable. Subsequently, the court, before whom the case was tried without a jury, found a judgment for the defendant, and from this judgment the appeal is taken.

The plaintiff offered in evidence two contracts purporting to be the contracts of the city, signed by the mayor of the city and attested by the city clerk. The validity of these contracts is attacked upon the ground that the mayor had no authority to execute them on behalf of the city.

If the contracts related to a matter concerning which any department of the city government had a right to contract, there arises *prima facie* presumption that the signatures of the mayor, and the seals of the city, were rightly attached to these contracts.

Proof of the performance of the terms of the contracts by

the railroad company would present a *prima facie* right to recover.

The defendants, however, insist that there was no action taken by that branch of the city government which has exclusive control of the contracts for sewers, to support the act of the mayor in signing and affixing the city seal to the contracts. The insistence is that this sole and exclusive power resides in the board of aldermen of the city of Paterson, and it appears from the records of that board that no action by it was taken in respect to the contracts in question.

If it be true that the sole power in this respect is vested in the board of aldermen, the defendant presents a *prima facie* case of want of authority in the mayor to execute the contracts.

By the old charter of the city of Paterson there was created a department of streets and sewers (*Pamph. L.* 1871, *p.* 846), which was invested with certain powers concerning sewers, and it is insisted that under this power these contracts could have been authorized, and it is insisted that there is no evidence to show that this department did not authorize the execution of these contracts.

The counsel for the defendant insists, however, that this department was stripped of all authority over sewers by force of the act of 1882 (*Pamph. L., p.* 60), entitled "An act to authorize cities to construct sewers and drains, and to provide for the payment of the cost thereof."

This act has been held a general act, and so repeals all inconsistent clauses contained in previous charters. It confers power on the board of aldermen to order sewers to be built in cities, and provides for a petition to the said board for the construction of sewers, and provides for the appointments of commissioners to estimate benefits, and provides for the payment of expenses of the improvement by the issue of certificates. That is the scope of the act: to provide for the construction, for the assessing of benefits, and for the payment of the expenses for the sewers.

Now, the city charter of 1871, in existence at the time these contracts were executed, as already remarked, provided for a

department of streets and sewers charged with the execution of powers given to the board of aldermen, among others, to construct in said cities such sewers and drains as may be necessary in any streets, houses, yards and places requiring drainage, and empowering the department to employ and provide compensation for all agents necessary for the efficient construction of such works.

The power existing under the charter so far as concerned the execution of the work and the employment of agents, does not seem to be in conflict with the powers conferred by the act of 1882. So, we think, that these contracts might have been authorized by this department of streets and sewers, and there being no testimony to show they were not so authorized, the *prima facie* presumption of regularity contained in the executed contracts conferred a right upon the plaintiff to recover.

It may be remarked that the limitation upon the power conferred upon the department of streets and sewers to enter into contracts, namely, to enter into contracts not in excess of five hundred dollars ($500)—see section 93 of the act of 1871—would not affect these contracts, as they do not appear to have been in excess of the limitation.

We think the judgment should be reversed.